# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:23-CV-00308-KDB

| | |
|---|---|
| MARY SNYDER,<br><br>**Plaintiff,**<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>**Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Mary Snyder's appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. Doc. No. 1. Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant's decision to deny Ms. Snyder Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

### I. PROCEDURAL BACKGROUND

On January 15, 2021, Ms. Snyder applied for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since August 14, 2020. Doc. No. 5 at 69. Ms. Snyder's claim was denied initially and upon reconsideration. *See id.* at 88, 95. Ms. Snyder requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by an attorney. After conducting the hearing, ALJ Benjamin Burton denied Ms. Snyder's application in a decision dated March 16, 2023. *Id.* at 11. The Appeals Council denied

Ms. Snyder's request for review; thus, the ALJ's decision stands as the final decision of the Commissioner. *Id.* at 5. Ms. Snyder now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Ms. Snyder was disabled under the law during the relevant period.[1] At step one, the ALJ found that Ms. Snyder had not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. §§ 404.1571, et seq., and 416.971, et seq) and at step two that she had the following severe impairments: inflammatory bowel disease; disorders of spine; carpal tunnel syndrome; anxiety; and depression. (20 C.F.R. § 404.1520(c). Doc. No. 5 at 16. At step three, the ALJ found that none of Ms. Snyder's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 17.

Before proceeding to step four, the ALJ determined that Ms. Snyder had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except she frequently could climb ladders, ropes, or scaffolds, and stoop. She could have no exposure to occupational hazards such as working at unprotected heights and around moving

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

mechanical parts. The claimant could frequently handle and finger with her bilateral upper extremities. She could maintain concentration, persistence, and pace for two-hour blocks throughout a workday.

*Id.* at 19. At step four, the ALJ found that Ms. Snyder could perform her past relevant work as a hardware salesclerk, DOT 279.357-050, light, semiskilled (SVP 4); and accounting clerk, DOT 216.482-010, sedentary, skilled (SVP 5), because this work did not require the performance of work-related activities precluded by the Ms. Snyder's residual functional capacity (20 C.F.R. § 404.1565).

Thus, the ALJ found that Ms. Snyder was not disabled under the Social Security Act from August 14, 2020, through March 31, 2022, the date last insured. *Id.* at 26.

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere

3

scintilla.² It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a

---

² As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty . . . lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' . . . [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' . . . To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards . . . but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

4

claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

Ms. Snyder argues that the Court should overturn the ALJ's finding of no disability because: (1) The ALJ's decision violated *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) when, in the RFC, he found that Ms. Snyder could maintain concentration, persistence, or pace ("CPP") for two-hour blocks during a workday, despite finding that Ms. Snyder had moderate limitations in CPP; (2) the ALJ impermissibly used objective medical data to discount Ms. Snyder's subjective symptoms of depression and anxiety; and (3) the ALJ erred by both impermissibly cherry picking the record and failing to make specific findings regarding the frequency and duration of Ms. Snyder's bathroom usage.

### 1. **Snyder's Moderate Limitations in Maintaining Concentration, Persistence, or Pace**

Snyder contends that the ALJ did not properly account for her limitations in maintaining CPP in the RFC when he restricted her to maintaining CPP in two-hour blocks. Specifically, Snyder suggests that the ALJ's determination of a moderate limitation to CPP stands in conflict with his finding that she could maintain CPP for two-hour blocks throughout a workday because "the POMS defines 'extended periods' as 'the approximately two-hour segments between arrival and first break, lunch, second break, and departure,' . . . ergo [the ALJ failed to address

5

Snyder's] limitations in concentrating, maintaining pace and staying on task." Doc. No. 6 at 5. *See also* DI § 25020.010(B)(2)(a). She asserts that this "failure" runs afoul of *Mascio.*

The Court must remand a case when the ALJ "ignor[ed] (without explanation) [the claimant's] moderate limitation in her ability to maintain her concentration, persistence, or pace" when conducting a function-by-function analysis. *Mascio,* 780 F.3d at 633. However, as explained by the Fourth Circuit in *Shinaberry,* this is not "a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." F.3d at 121. Instead, the ALJ can explain why these limitations do "not translate into a limitation" in the RFC. *Id.* Therefore, the Court will uphold the Commissioner's decision where the ALJ sufficiently explained the relevant findings, the mental limitations (if any) included in the RFC and supported the decision by substantial evidence. *Id.* at 122.

The Court is unpersuaded by Snyder's argument and finds, in accordance with numerous other courts, that a two-hour limitation specifically addresses Snyder's moderate limitation in CPP in accordance with the requirements set forth in *Mascio*. *See Fender v. Berryhill*, No. 1:17-CV-00041-RJC, 2018 WL 1536485, at *7 (W.D.N.C. Mar. 29, 2018) ("two-hour limitation directly addresses Plaintiff's moderate limitations in concentration, persistence or pace."); *Escalante v. O'Malley*, No. 5:23-CV-151-MOC, 2024 WL 870577, at *3 (W.D.N.C. Feb. 29, 2024) ("[t]his Court has repeatedly and consistently stated that reference to the ability to remain on task for two hours at a time satisfies the *Mascio* requirement that an ALJ address the ability to remain on task when the ALJ finds, in analyzing the Listings, that an individual has moderate limitations in concentration, persistence, or pace.") (quoting *Christensen v. Saul*, No. 1:19-CV-68-MOC, 2019 WL 6359764, at *6 (W.D.N.C. Nov. 27, 2019); and *Hampton v. Saul*, No. 1:19-CV-00186-RJC, 2020 WL 3799769, at *3 (W.D.N.C. July 7, 2020) ("This Court has previously

6

held that 'a two-hour limitation directly addresses Plaintiff's moderate limitations in concentration, persistence or pace.").

Further, the ALJ clearly and thoroughly explains his reasoning behind the limitations he provided in the RFC. Broadly, the ALJ found that the "record as a whole—the medical evidence, the opinion evidence, and the claimant's testimony—supports a finding that [Ms. Snyder] retains the ability to perform work activity within the limitations described in the [RFC]." Doc. No. 5 at 25. He then explains this conclusion, stating:

> The opinion that [Ms. Snyder] can understand, retain, and follow simple and complex work-related instructions is supported by Dr. Fiore's examination showing normal memory and average to above average intelligence. The opinion of moderate limitation in performing repetitive tasks on a sustained basis appears to be consistent with a limitation to maintaining concentration, persistence, and pace for two-hour blocks, and is supported by the examination showing some difficulty with serial sevens but the ability to recite seven digits forward and backward and perform simple calculations. This portion of the opinion is also generally consistent with the medical evidence, showing intact memory and concentration and average intelligence. However, moderate limitation in relating to co-workers and supervisors and tolerating stress is not supported by Dr. Fiore's examinations showing [Ms. Snyder] to be alert and oriented, cooperative, and appropriately groomed and dressed, with good judgment, insight, abstraction, and fund of information. It also is not consistent with observations showing [Snyder] to be alert and oriented, pleasant and cooperative, and appropriately groomed and dressed, with intact memory, concentration, fund of information, judgment, and insight. Finally, it is inconsistent with the fact that [Snyder] has maintained independent activities of daily living and frequently cares for her young grandson despite limited health treatment.

Doc. No. 5 at 24. He further explains his RFC by citing to numerous exhibits; the hearing transcript; and noting that Snyder is "able to drive, shop, prepare meals, watch TV, read, use the internet, spend time with friends and family, watch her grandson for up to two hours at a time, and manage her own personal hygiene and grooming. Doc. No. 15 at 18, 22-25. Additionally, Snyder reported she could independently manage personal finances, pay her bills, manage her

7

medical care by going to doctor's appointments, properly take medications, follow directions from providers, deal appropriately with authority, and get along with others. *Id.*

Ultimately, the RFC accounted for all this evidence by limiting Snyder to "maintaining concentration, persistence, and pace for two-hour blocks throughout the workday." Doc. No. 5 at 19. Thus, the ALJ sufficiently explained his reasoning, supported by substantial evidence, as to the mental limitations in the RFC. As such, the Court finds no reversible error and will affirm the ALJ's opinion with respect to Plaintiff's first objection.

2. **Snyder's Depression and Anxiety**

Snyder next asserts that the ALJ failed to properly evaluate her depression and anxiety and their impact on her ability to function when crafting the RFC, in violation of *Shelley C. v. Comm'r of Soc. Sec. Admin.,* 61 F.4th 341, 361 (4th Cir. 2023). The Commissioner argues that the ALJ sufficiently considered Snyder's subjective complaints related to her depression and anxiety and explained the inconsistency between the evidence, the record, and her testimony.

In 2020, the Fourth Circuit held that when diseases do not produce objective medical evidence, the lack thereof may not be used to discredit a claimant's subjective symptoms of that disease. *See Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83 (4th Cir. 2020). Objective evidence includes normal clinical and laboratory results. *Id.* at 97. In *Arakas*, the Court addressed fibromyalgia, but left the door open for other diseases that similarly fail to produce objective medical evidence. 983 F.3d at 97. In *Shelley C.,* 61 F.4th at 361, the Fourth Circuit expanded "other diseases" to include chronic depression.

"However, a diagnosis of . . . depression does not render a claimant per se disabled. While 'a claimant's allegations about her [depression] may not be discredited solely because they are not substantiated by objective evidence' . . . they need not be accepted to the extent they are

8

inconsistent with the available evidence." *Shelby D. v. Kijakazi*, No. 3:22-CV-00234, 2023 WL 6444895, at *11 (S.D.W. Va. Sept. 29, 2023) (quoting *Lasharne W. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-21-cv-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023)). Further, "the impropriety of relying upon objective medical evidence of symptoms does not mean that the Agency must ignore any evidence whatsoever in . . . medical records." *Id.* Thus, properly limited, "*Shelley C.* and *Arakas* prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions," but do not disallow the consideration of other evidence contrary to a finding of disability. *Jarius B. v. O'Malley,* No. 3:22-CV-748-SLS, 2024 WL 1356680, at *7 (E.D. Va. Mar. 28, 2024) (quoting *Anthony P. v. O'Malley*, No. 1:22-CV-291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024)) (finding that the ALJ "did not discount Plaintiff's subjective complaints [in violation of *Arakas* and *Shelley C.*] simply because the complaints were not corroborated by the record's medical evidence. Rather, . . . the ALJ here looked at multiple factors in evaluating Plaintiff's symptoms, including Plaintiff's own statements, his robust daily life activities, and his treating provider's observations.").

Here, as in *Anthony P.*, the Court finds that the ALJ did not improperly rely on objective medical evidence to discount Ms. Snyder's anxiety and depression, and instead fully considered Ms. Snyder's subjective complaints and favorable medical evidence regarding abnormal mental status examinations. In fact, the ALJ expressly stated that he was "cognizant of the . . . inherent subjective nature of mental diagnoses." Doc. No. 5 at 22. Using that knowledge, and explicitly giving deference to Ms. Snyder's subjective reports, he found state medical consultants April Strobel-Nuss, Psy.D.'s, and Michael Fiore, Ph.D.'s determinations that Ms. Snyder's "mental impairments [were] nonsevere," to be only "somewhat persuasive" and instead determined that

Ms. Snyder in fact had severe [depression and anxiety] that significantly limited her ability to perform basic work activities. Doc. No. 5 at 16, 23.

The ALJ also reviewed Ms. Snyder's complaints in detail, noting that Ms. Snyder reported "worsening anxiety and depression," and has "difficulty concentrating, completing tasks, and maintaining focus," and that her medications "cause dizziness and drowsiness." *Id.* at 18, 20. He further noted that at medical appointments, Ms. Snyder presented with "sad or tearful affect," and was "fidgety and anxious, and her affect was blunted, sad, and tearful." *Id.* at 22. He also noted that she required psychotropic medications and attended at least one counseling session. *Id.* Still, the ALJ concluded based on other factors, including Ms. Snyder's daily activities and the inconsistencies in her allegations regarding the limiting effects of her impairments, that she had the RFC described in his decision.[3] *See* Doc. No. 5 at 22-23, 255-60.

While the ALJ may not support his decision based on "minimal daily activities" because they do not, without more, prove a claimant's ability to engage in full-time work, here the ALJ did not support his decision with only minimal daily activities. *See Arakas*, 983 F.3d at 101. Rather, Ms. Snyder acknowledged being able to more substantially prepare meals, pay bills and manage her funds, go to doctor's appointments, take medications, grocery shop, drive, and read. Doc. No. 5 at 18. She can get along with others, spend time with family and friends, watch her grandson for up to two hours at a time, manage her own self-care and personal hygiene, and manage her own medical care. *Id.* The third-party function report provided by Ms. Snyder's husband further supports her ability to do more than minimal activities. Her husband states that

---

[3] For example, Ms. Snyder stated it would be impossible to stay focused on something for two hours straight, yet acknowledges spending time with and caring for her grandson for up to two hours at a time. Also, her husband indicated that she can read, chat on the phone, watch tv (all of which he reports her to be doing on an increased basis) and that she can finish what she starts.

she helps care for him as much as possible, and while she cooks less overall, she still makes her own simple meals; can do housework (including light sweeping and dishwashing); gets along "well" with authority figures; has no issues following instructions; has no problem paying attention or finishing what she starts; and enjoys tv, reading, and carrying on phone conversations with family, all of which she does with an increased frequency. Doc. No. 5 at 255-260 (Exhibit 7E). These activities, particularly her ability to care for herself and other individuals [husband, grandson], rise above minimal daily activities.

Finally, the ALJ did account for Ms. Snyder's limitations and subjective complaints in the RFC. In the 12-page RFC analysis, the ALJ concluded Ms. Snyder had the ability to perform only "light work" with the ability to "frequently climb ladders, ropes, or scaffolds, and stoop," could "frequently handle and finger with her bilateral upper extremities," and "could maintain concentration, persistence, and pace for two-hour blocks throughout the workday." *Id.* at 19. Therefore, the Court finds that the ALJ did not discount her subjective complaints based on a lack of objective medical evidence, but instead supported his decision with substantial evidence in the record as described above. *See Terry M. v. O'Malley*, No. CV 1:23-4764-BHH-SVH, 2024 WL 1334050, at *13, 16 (D.S.C. Mar. 7, 2024), *report and recommendation adopted*, No. CV 1:23-4764-BHH, 2024 WL 1333349 (D.S.C. Mar. 28, 2024) (affirming the ALJ's determination that claimant was not disabled despite having depression and anxiety as a "severe impairments," and noting the decision did not run afoul of *Shelley C.*, when the record demonstrates that the ALJ considered "Plaintiff's statements to her providers [including if any conflicted with other subjective evidence in the record], her medications and treatment history, her ADL's and other activities, and the consultative examiners' and medical consultant's impressions and opinions."); *Melissa B. v. Kijakazi*, No. 2:22-CV-00536, 2023 WL 3611564, at *15 (S.D.W. Va. May 4,

11

2023), *report and recommendation adopted,* No. 2:22-CV-00536, 2023 WL 3607511 (S.D.W. Va. May 23, 2023) (affirming the ALJ's determination that claimant with depression as a severe impairment was not disabled and did not run afoul of *Shelley C.* when the ALJ provided a "thorough and adequate review of the Plaintiff's subjective complaints and reconciled them with the medical and other evidence of record and determined that [claimant's] symptoms did not limit her to the extent alleged.").

While Ms. Snyder may disagree with the ALJ's RFC assessment, she has not demonstrated that his evaluation of the evidence constituted a violation of *Shelley C.*; nor may she ask the Court to reweigh the evidence and arrive at a different conclusion. *See Shelby D. v. Kijakazi*, No. 3:22-CV-00234, 2023 WL 6444895, at *12 (S.D.W. Va. Sept. 29, 2023) (quoting *Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972)) ("if supported by substantial evidence, [the decision] must be affirmed."). Accordingly, the Court will also affirm the ALJ's determination with respect to Ms. Snyder's second argument.

### 3. Snyder's Inflammatory Bowel Disease

In Ms. Snyder's final issue on review, she asserts two arguments – first, that the ALJ erred by engaging in impermissible cherry picking when reviewing the record, and second, that the ALJ erred when he determined that Ms. Snyder had the severe impairment of inflammatory bowel disease ("IBD") at step two of the SEP but failed to make findings "regarding the frequency and duration of her need for bathroom breaks" in the RFC. Doc. No. 6 at 11.

*Cherry Picking the Record*

Ms. Snyder alleges that the ALJ cherry picked the record when he did not specifically reference some of the medical appointments that discussed her IBD symptoms.[4] An ALJ has the "obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). However, "this Circuit has recognized that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" *Jonathan W. v. Kijakazi*, No. 2:23-CV-00315, 2023 WL 5767748, at *9 (S.D.W. Va. Aug. 17, 2023), *report and recommendation adopted,* No. 2:23-CV-00315, 2023 WL 5751445 (S.D.W. Va. Sept. 6, 2023) (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). Moreover, an ALJ's "failure to cite specific evidence does not indicate that it was not considered." *Manigo v. Colvin*, No. 0:13-CV-3185-BHH, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Jonathan W.,* 2023 WL 5767748, at *9 (quoting *Clark v. Comm'r of Soc. Sec.*, No. 2:09-CV-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010)) (citation omitted). Thus, an ALJ's opinion is "sufficient if it not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." *Id.* (internal quotations omitted). Finally, it is imperative that an ALJ's decision be "read as a whole in order to discern whether substantial evidence supports a finding." *Jonathan W.,* 2023 WL 5767748, at *9.

---

[4] Specifically, Plaintiff takes issue with the ALJ not explicitly referencing medical visit notes in September 2022, October 2022, and January 2023.

Despite Ms. Snyder's allegation to the contrary, the evidence in the record demonstrates that the ALJ did not engage in impermissible cherry picking when determining her RFC because he acknowledged both positive and negative findings related to Ms. Snyder's IBD symptoms, reconciled them, and explained why he didn't include limitations in the RFC. He noted that Ms. Snyder reported during her hearing that she needs to use the restroom frequently, each time lasting up to 8-12 minutes. Doc. No. 5. at 20. However, he found Ms. Snyder's statements "concerning the intensity, persistence and limiting effects of her symptoms [to not be] entirely consistent with the medical evidence and other evidence in the record for the reasons explained [in his decision]." *Id.* In explaining his RFC determination, he referenced numerous exhibits in the record where Ms. Snyder reported diarrhea as well as those where she denied diarrhea. He noted that after being successfully being treated for c-diff in January 2021, Ms. Snyder reported her symptoms to be improved as noted in Exhibit 4F. At that same appointment in January 2021, Ms. Snyder denied diarrhea and reported "no concerns or problems today." Doc. No. 5 at 377, 380.

The ALJ further noted that after that visit, Ms. Snyder had "little evidence of ongoing treatment, had negative lab work and stool studies," and didn't officially carry a diagnosis of IBD or irritable bowel syndrome ("IBS") (at best, medical providers were considering IBS as a differential diagnosis) and referenced Exhibits 4 and 9. Doc. No. 5 at 20, 372. He went on to state that medical observations in the record were:

> largely benign, at times showing mild diffuse abdominal tenderness, but otherwise revealing it to be soft, nontender, and nondistended, with no guarding or rebound, normal bowel sounds, and no palpable masses. Further, treatment notes indicate the claimant denied symptoms including nausea, vomiting, and diarrhea.

Doc. No. 5 and 20-21. As evidence, the ALJ references medical records in Exhibits 1, 4, 9, and 11. Those medical records and others demonstrate the following:

- Ms. Snyder was diagnosed with c. diff in January 2021, and treated with antibiotics. She reported "no diarrhea" at this appointment with P.A. Ferrantelli. Doc. No. 5 at 377-378 (Exhibit 4F).
- Ms. Snyder reported in July 2021 that her "IBS symptoms" were "worse when anxious" but did not endorse the presence of diarrhea at the appointment. Doc. No. 5 at 406 (Exhibit 6F).
- Ms. Snyder reported "persistent issues with diarrhea" at an October 2021 medical appointment. The P.A. Ferrantelli noted she would "consider IBS." Doc. No. 5 at 412 (Exhibit 7F).
- At another appointment with P.A. Ferrantelli that same month (October 2021), Ms. Snyder reported "no diarrhea." Doc. No. 5 at 438 (Exhibit 9F).
- In a February 2022 appointment, Ms. Snyder reported "neuropathy" as her biggest issue, and reported no history of change in bowel habits. She was assessed as having "positive bowel sounds, non-tender, no rebound tenderness, guarding, rigidity, or CVA tenderness." Doc. No. 5 at 427-29 (Exhibit 8F).
- In April 2022 visit with P.A. Ferrantelli, Ms. Snyder denied diarrhea and abdominal pain. Doc. No. 5 at 444 (Exhibit 9F).
- In September 2022, a provider notes "diarrhea – has tests pending." Doc. No. 5 at 450 (Exhibit 9F).
- The following month, in October 2022, Ms. Snyder does not report diarrhea to her provider when her gastrointestinal system is assessed, and the record contains a full review of [body] systems ("ROS") identical to that of the September 2022 visit, suggesting it had simply been copied forward from the previous visit. Doc. No. 5 at 460 (Exhibit 9F).
- In January 2023, P.A. Ferrantelli opined in a "Medical Assessment of Ability To Do Work Related Activities (Physical)" Questionnaire that Ms. Snyder could only "sit in a work like environment for two hours out of eight," in part due to "persistent diarrhea." Doc. No. 5 at 474 (Exhibit 11F).

In short, after being treated for c. diff in early 2021, Ms. Snyder denied diarrhea more often than she endorsed it. When she did endorse it, she didn't describe its frequency or duration, nor did she seek any treatment to manage it.[5] Indeed, her medical providers, while "considering IBS"

---

[5] Further, the asserted fact that Ms. Snyder could not afford a colonoscopy (Doc. No. 5 at 371) is immaterial; there are many IBD/IBS treatments that do not first require a colonoscopy and could have been initiated had Ms. Snyder and her medical providers determined her symptoms were significant enough to warrant them. For example, treatments for IBD/IBS can include diet and lifestyle modifications, over the counter or prescription medications, and alternative therapies. *See Irritable Bowel Syndrome*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/diagnosis-treatment/drc-20360064 (last accessed December 3, 2024).

never treated her for it at all. All of this supports the ALJ's RFC and his overall determination that Ms. Snyder is not disabled.

While Ms. Snyder correctly points out that the ALJ did not specifically discuss the September and October 2022 visit notes by FNP Perrignon, he did reference the exhibit in which they are contained. In addition, the October 2022 visit contains a complete ROS that appears to be copied forward verbatim from the September 2022 visit; this ROS is where the only reference to diarrhea is contained. In fact, when the gastrointestinal ("GI") system was analyzed elsewhere in the October 2022 visit note, Ms. Snyder did not report diarrhea at all. Further, contrary to Ms. Snyder's argument, the ALJ specifically referenced the January 2023 visit and found P.A. Ferrantelli's opinion that Ms. Snyder could only "sit for two hours out of eight" to be "wholly unpersuasive" and unsupported by the provider's "relatively benign treatment notes." Doc. Nos. 5 at 24-25, 474. Indeed, after treatment for c. diff, Ms. Snyder denied diarrhea more often than not to P.A. Ferrantelli and other providers.

Moreover, by pointing to record evidence Ms. Snyder believes supported greater limitations in the RFC arising out of her IBD (Doc. No. 6 at 14-15), she misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted), supported the ALJ's finding that a specific limitation in the RFC for Ms. Snyder's IBD was not warranted, and not whether other record evidence weighed against that finding, *see Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the plaintiff] disagrees with the ALJ's decision, or that there is other evidence in the record that

weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

In sum, the ALJ thoroughly analyzed Ms. Snyder's IBD, including her reported symptoms and the medical record, in crafting his findings that no limitation in the RFC was warranted for Ms. Snyder's IBD. Thus, the ALJ did not engage in impermissible cherry picking, and when the ALJ's decision is "read as a whole" it is clear that he has proffered substantial evidence from the record to support his findings. *Jonathan W.,* 2023 WL 5767748, at *9 (citation omitted).

*Frequency and Duration of Bathroom Breaks*

Second, Ms. Snyder argues that when an ALJ finds that a claimant has a severe impairment of a gastrointestinal ("GI") or genitourinary ("GU") nature, the ALJ *must* make specific findings concerning the frequency and duration of the claimant's bathroom usage. *Id.* (emphasis added). To provide context, the RFC measures "the most a claimant can do despite any physical and mental limitations." *Mary W. v. O'Malley*, No. 1:23-CV-128, 2024 WL 1256268, at *5 (M.D.N.C. Mar. 25, 2024) (quoting *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). To develop the RFC, an ALJ determines a claimant's exertional and non-exertional capacity after considering all of a claimant's impairments, as well as any related symptoms. *See Hines*, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b). From there, the ALJ matches "the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy)." *Mary W.*, 2024 WL 1256268, at *5. *See also* 20 C.F.R. §§ 404.1567, 416.967. While an ALJ need not discuss every piece of evidence in making an RFC determination, he must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to [that] conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)

17

(internal emphasis, quotation marks, and brackets omitted). *See also Reid,* 769 F.3d at 865. Here, no basis for remand exists, because the ALJ's decision supplies the required "accurate and logical bridge," *Woods*, 888 F.3d at 694, between the evidence in the record and his findings that Ms. Snyder's IBD qualified as a severe impairment at step two of the SEP but did not warrant specific restrictions in the RFC.

In Ms. Snyder's view, "when an ALJ finds that a claimant has an impairment that *could* require her to have ready access to a bathroom, the ALJ *must* make specific findings concerning the frequency and duration of Plaintiff's bathroom usage . . . because it *could* take the individual away from the workstation . . . too frequently to perform competitive work." Doc. No. 6 at 11 (emphasis added) (citing *Summey v. Berryhill,* No. 1:16-CV-1185, 2018 WL 708355, at *3 (M.D.N.C. Feb. 5, 2018) (reversing the Commissioner and remanding to the ALJ for specific findings when the ALJ noted a severe impairment of a GI nature and included a limitation in the RFC requiring that plaintiff have "access to the bathroom facilities on an as needed basis," yet failed to make specific findings as to the frequency and duration of bathroom breaks); *see also Davis v. Comm'r of Soc. Sec.*, No. 2:10-CV-30, 2011 WL 442118, at *1 (N.D.W. Va. Feb. 2, 2011) (remanding the case when the ALJ included in the RFC a required accommodation putting the plaintiff near a bathroom but failed to make specific findings regarding the frequency and duration of the plaintiff's need to use the bathroom); *Binder v. Colvin*, No. 5:12-CV-271-D, 2013 WL 1686306, at *3 (E.D.N.C. Mar. 21, 2013), *report and recommendation adopted,* No. 5:12-CV-271-D, 2013 WL 1694678 (E.D.N.C. Apr. 18, 2013) (Remanding when the ALJ determined in the RFC that Plaintiff required "access to bathroom/toilet facilities in the work environment," but did not make specific findings concerning the frequency and duration of claimant's bathroom usage.).

However, Ms. Snyder's argument is too broad. In each of the aforementioned cases, the plaintiff had a severe impairment of a GI or GU nature. In each, the ALJ included in the RFC a limitation requiring access to or working near a bathroom, and in each, the ALJ failed to clarify how often and for how long bathroom breaks might be needed. In short, *Summey, Davis,* and *Binder* all hold (much more specifically than argued by Ms. Snyder) that when an ALJ determines that [due to an impairment] a claimant requires access to a bathroom, the ALJ should make specific findings concerning the frequency and duration of their bathroom usage. These cases thus do not control here where no such limitation was included in the RFC and no clarification as to the duration or frequency of bathroom breaks is necessary. Further, the Court declines to expand the law as suggested by Ms. Snyder. *See Patricia K. v. Saul*, No. 5:18-CV-134, 2020 WL 3108712, at *10 (W.D. Va. Feb. 28, 2020) ("[the] ALJ . . . offered good reasons to question [the plaintiff's] reports about the number of bathroom breaks she would need during the day, and to conclude that, despite her severe IBS or Crohn's disease, she could make it through an eight-hour workday with normal breaks. Thus, the ALJ was not required to include additional bathroom breaks in his RFC finding.").

The ALJ's decision thus provides a "logical bridge," *Woods*, 888 F.3d at 694, connecting the evidence to his conclusion that no limitation in the RFC was required necessary to accommodate Ms. Snyder's IBD, and Ms. Snyder has not shown a basis for remand.

V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal is (Doc. No. 6) is **DENIED** and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: December 8, 2024

Kenneth D. Bell
United States District Judge